**CITY OF CRAWFORDSVILLE, Appellant–Plaintiff,**

**v.**

**David PRICE d/b/a David Price Excavating, David Price Excavating, Inc., Appellees–Defendants.**

**No. 54A05–0204–CV–193.**

Court of Appeals of Indiana.

Nov. 14, 2002.

John S. Capper, IV, Robert N. Reimondo, Berry Capper & Tulley, Crawfordsville, IN, Attorneys for Appellant.

Patricia A. Douglass, Hehner & Douglass, Indianapolis, IN, Attorney for Appellees.

## OPINION

SHARPNACK, Judge.

The City of Crawfordsville ("City") appeals the trial court's grant of summary judgment to David Price, d/b/a David Price Excavating and David Price Excavating, Inc. ("DPE"), and the trial court's denial of the City's motion to correct error.[1] The City raises three issues, which we consolidate and restate as whether the trial court erred by granting DPE's motion for summary judgment. We reverse and remand.

The facts most favorable to the City follow. On March 17, 1997, a homeowner contacted Rodney Jenkins, Street Commissioner for the City. The homeowner reported that a large sinkhole had developed in his backyard. Jenkins learned that the sinkhole was large enough to "park a small pickup truck in" and was located over a collapsed storm sewer line. Appellant's Appendix at 75. Jenkins solicited quotes from three contractors, including DPE. DPE was the only contractor able to pro-

---

1. The City's attention is directed to Ind.App. Rule 46(A)(10) which requires an appellant's brief to "include any written opinion, memorandum of decision or findings of fact and conclusions thereon relating to the issues raised on appeal."

vide a quote for the repairs. The next day, the City's Board of Public Works and Safety declared an emergency to repair the collapsed storm sewer quickly and authorized Jenkins to hire DPE to make the repairs.

Although the total cost for the project could not be predicted, Jenkins estimated that the cost of the repairs would be "over twenty-five thousand dollars." *Id.* Jenkins and DPE agreed that DPE would be paid on a "time and material" basis. *Id.* at 77. Upon starting the repairs, the parties learned that the broken storm sewer line was approximately forty feet underground. DPE asked Jenkins if it could use plastic or polyethylene pipe as an alternative to steel or concrete pipe. Jenkins responded "I don't care as long as it works." *Id.* at 78. The final cost of the repairs was $90,216.86. However, in March of 1998, the storm sewer again collapsed. The second repairs cost $345,686.89.

The City filed a complaint against DPE alleging that the storm sewer collapsed as a result of DPE's "negligent workmanship." *Id.* at 2. DPE filed a motion for summary judgment, which the trial court granted. The trial court held that the City had statutory duties to: (1) supervise the repair of the storm sewer project; (2) procure plans for the storm sewer project; (3) have a professional engineer develop the repair plans; and (4) have an engineer supervise the project. Further, the trial court held that the City breached its statutory duties by failing to: (1) invite bids or quotes from persons known to deal in the public work required to be done; (2) indicate in the Board's minutes the names of the persons invited to bid or provide quotes; (3) obtain plans developed by an engineer for repairing the storm sewer; and (4) retain an engineer to supervise the repairs. The trial court held that the contract between the City and DPE was void

because the City had failed to follow the relevant statutes. Further, the trial court held that the City was negligent by failing to comply with the relevant statutes and "proximately caused, or materially contributed to, the [C]ity's loss and damage from the failed DPE repair." *Id.* at 135. Lastly, the trial court held that DPE was "entitled to retain what it was paid for its work on the basis of quantum meruit." *Id.* The City filed a motion to correct error, which the trial court denied.

 A decision to grant or deny a motion to correct error is reviewed for an abuse of discretion. *Time Warner Entertainment Co., L.P. v. Whiteman,* 741 N.E.2d 1265, 1270 (Ind.Ct.App.2001). An abuse of discretion occurs when the trial court's action is against the logic and effect of the facts and circumstances before it and the inferences that may be drawn therefrom. *Dughaish ex rel. Dughaish v. Cobb,* 729 N.E.2d 159, 167 (Ind.Ct.App. 2000), *reh'g denied, trans. denied.* To determine whether the trial court abused its discretion by denying the City's motion to correct error, we must decide whether the trial court erred when it granted DPE's motion for summary judgment.

On appeal, the standard of review of a grant or denial of a motion for summary judgment is the same as that used in the trial court: summary judgment is appropriate only where the designated evidence shows that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Corr v. Am. Family Ins.,* 767 N.E.2d 535, 537–538 (Ind.2002). The moving party must designate sufficient evidence to eliminate any genuine factual issues, and once the moving party has done so, the burden shifts to the nonmoving party to come forth with contrary evidence. *Shambaugh & Son, Inc. v. Carlisle,* 763 N.E.2d 459, 460–461 (Ind.2002). The court must ac-

cept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmovant, and resolve all doubts against the moving party. *Id.* Summary judgment will be affirmed on appeal if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. *United Rural Elec. Membership Corp. v. Ind. Mich. Power Co.,* 648 N.E.2d 1194, 1196 (Ind.Ct. App.1995), *trans. denied.*

■■■ Where a trial court enters findings of fact and conclusions thereon in granting a motion for summary judgment, as the trial court did in this case, the entry of specific findings and conclusions does not alter the nature of our review. *Rice v. Strunk,* 670 N.E.2d 1280, 1283 (Ind.1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. *Id.* They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

Here, the City argues that the trial court erred by finding that the contract between the City and DPE was void. The contract is governed by Ind.Code §§ 36–1–12–1 to –21 (1998 & 2001 Supp.), which governs public works projects of local governments. Under Ind.Code § 36–1–12–16 (1998), a "contract for public work by a political subdivision or agency is void if it is not let in accordance with this chapter." The trial court held that the contract was void because the City failed to: (1) invite bids or quotes from persons known to deal in the public work required to be done; (2) indicate in the Board's minutes the names of the persons invited to bid or provide quotes; (3) obtain plans developed by an engineer for repairing the storm sewer; and (4) retain an engineer to supervise the repairs. Although the parties devote their arguments to whether the trial court correctly determined that the contract is void,

we resolve this appeal on a different basis. Even assuming that DPE is correct and the contract is void, DPE was not entitled to summary judgment as a matter of law for two reasons.

■■■ First, DPE argued, and the trial court agreed, that because the contract was void, the City breached its duties and was negligent. DPE argued further that because of the City's negligence, "the onus of negligence [is shifted] from DPE to the City and it is the City alone which must answer for the result of its own negligence." Appellant's Appendix at 18. DPE, in effect, argued that the City's contributory negligence barred the City's negligence claim against DPE. We disagree.

■■■ The Comparative Fault Act was adopted in Indiana in 1983 and went into effect in 1985. Ind.Code §§ 34–51–2–1 to –19 (1998); *see Control Techniques, Inc. v. Johnson,* 762 N.E.2d 104, 107 (Ind.2002). The Comparative Fault Act "abolished the harsh common law rule that a plaintiff contributorily negligent to any degree was barred from all recovery." *Control Techniques,* 762 N.E.2d at 109. In claims under the Tort Claims Act, the common law still applies and contributory negligence operates to bar a plaintiff's recovery against government actors. *Sauders v. County of Steuben,* 693 N.E.2d 16, 18 (Ind. 1998). However, the Tort Claims Act does not apply to this case. The Tort Claims Act applies only to tort claims against governmental entities, not tort claims by governmental entities. Ind.Code §§ 34–51–2–2 (1998), 34–13–3–1 (1998). Here, the City filed a negligence action against DPE. Thus, the Comparative Fault Act applies and contributory negligence is not a complete bar to the City's action.

■■■ "Under the Comparative Fault Act, liability is to be apportioned among persons whose fault caused or contributed

to causing the loss in proportion to their percentages of 'fault' as found by the jury." *Control Techniques*, 762 N.E.2d at 109; *see* Ind.Code § 34–51–2–8 (1998). Even if the City was negligent in failing to follow the proper statutory requirements, the City's negligence does not 'bar the City's negligence claim against DPE. Rather, fault must be apportioned between the City and DPE. "Fault apportionment under the Indiana Comparative Fault Act is uniquely a question of fact to be decided by the jury." *McKinney v. Pub. Serv. Co. of Ind., Inc.*, 597 N.E.2d 1001, 1008 (Ind. Ct.App.1992), *trans. denied.* We observed in *Robbins v. McCarthy* that "at some point the apportionment of fault may become a question of law for the court. But that point is reached only when there is no dispute in the evidence and the factfinder is able to come to only one logical conclusion." 581 N.E.2d 929, 934 (Ind.Ct.App. 1991), *reh'g denied, trans. denied.*

In this case, we cannot say that a factfinder could come to only one logical conclusion on the apportionment of fault. In particular, differing inferences can be drawn from the fact that in response to DPE asking Jenkins if it could use plastic or polyethylene pipe as an alternative to steel or concrete pipe, Jenkins responded "I don't care as long as it works." Appellant's Appendix at 78. Thus, the apportionment of .fault under these circumstances should be left to the factfinder. *See, e.g., id.* at 934–935 (holding that the apportionment of fault should be left to the jury where the record did not show "the misconduct of the parties to be so disproportionately weighted against recovery as to compel the sole conclusion that Robbins bore better than fifty percent of the fault").

 Secondly, even assuming that the contract is void due to the City's failure to follow the proper statutory proce-dures, we hold that DPE is estopped from asserting the invalidity of the contract in this case.

The general rule is that one who makes a contract with a municipality is estopped to assert that it was ultra vires, when it is sought to be enforced against him or her, and this rule has been discussed in considering the rights, remedies, and obligations of municipal contractors and their sureties in various fact situations and relations. Thus, where one takes a lease of public grounds and has the full enjoyment of them, that person will be estopped from denying the corporate power to make the lease in an action on the bond executed for payment of the lease. So, although the city may not have the power to contract for the labor of its incarcerated prisoners, one who has so contracted with the city, and has received the benefit of such labor, will be estopped to deny the validity of the contract. So if the contract is not ultra vires in the strict sense of the term, but is invalid merely because the contract was not made as provided for by a statutory provision for the benefit of the municipality, the latter may waive any noncompliance with the statute, and the invalidity is no defense. A surety on the bond of a contractor to the city for faithful performance of the contract which was expressly made a part of the bond, cannot complain that necessary legal formalities were not complied with in letting the contract.

Eugene McQuillin, *The Law of Municipal Corporations* § 29.133 (1999) (footnotes omitted).

This general rule is consistent with prior opinions of this court. We have previously held that "where a contract has been executed and fully performed on the part of the corporation, or of the party with whom

it contracted, neither will be permitted to insist that the contract was not within the power of the corporation." *Payne v. Mundaca Inv. Corp.*, 562 N.E.2d 51, 57 (Ind.Ct. App.1990) (quoting *Wittmer Lumber Co. v. Rice*, 23 Ind.App. 586, 591, 55 N.E. 868, 869 (1900)) (discussing an allegedly illegal loan agreement). Furthermore, in *Kerr v. State ex rel. McDaniel*, 65 Ind.App. 102, 116 N.E. 590 (1917), in response to a complaint from a material supplier against a contractor and the contractor's surety, the contractor and surety argued that the contract between the contractor and a municipality was against public policy and void. *Id.* at 103–104, 116 N.E. at 591. We noted that "the contractor has received the full benefit of the contract which he is now seeking to avoid on the ground that it contravenes public policy, and that, in so far as there was a possibility of the public being injuriously affected by the acceptance of said improvement and said material furnished by the [supplier] in connection therewith, [the contractor] has himself procured the full benefits of such acceptance and received value from said city for said materials." *Id.* at 106–107, 116 N.E. at 592. We discussed our reluctance to relieve public corporations from liability in similar cases and stated "much greater reason exists for a court's refusal to give consideration or aid to the accomplishment of such an end when, as in the instant case, the invalidity of the contract is invoked by the contractor himself, to avoid paying for the very material, the acceptance of which, and the payment for which, he has procured at the hands of such public corporation." *Id.* at 107, 116 N.E. at 592.

Similarly, here, DPE should not be entitled to receive the full benefit of the contract with the City and now, when faced with a negligence claim based upon its work, argue that the contract is void. The provisions of the local government public works contract statutes that void contracts entered into in violation of the statutory procedures were enacted "for the benefit of property holders and taxpayers." *Shook Heavy & Envtl. Const. Group, a Div. of Shook, Inc. v. City of Kokomo*, 632 N.E.2d 355, 358 (Ind.1994) (discussing competitive bidding statutes); *see also State v. Am. Motorists Ins. Co.*, 463 N.E.2d 1142, 1148 (Ind.Ct.App.1984) (holding that the denial of a surety's right to assert the invalidity of a contract was consistent with the public interest where the statute invoked by the surety to avoid paying under its performance bond was designed not to protect the surety, but rather to safeguard the public treasury). The statutes upon which DPE relies were enacted to protect the public, not contractors alleged to have caused damage as a result of poor workmanship. DPE is estopped from arguing that its contract with the City is void to circumvent the City's negligence claim.[2]

2. Because the City characterized its claim against DPE as "negligent workmanship," it is unclear whether the City's complaint was a breach of contract action or a negligence action. Although the parties do not argue that the City brought a claim for breach of contract, we note that "[i]n a contract for work, there is an implied duty to do the work skillfully, carefully, and in a workmanlike manner. Negligent failure to do so is a tort, as well as a breach of contract." *Homer v. Burman*, 743 N.E.2d 1144, 1147 (Ind.Ct.App. 2001), *reh'g denied*. However, authority also exists for the proposition that a plaintiff who suffers a purely economic loss under a contract is restricted to contractual remedies and cannot recover for negligence. *See Choung v. Iemma*, 708 N.E.2d 7, 13–14 (Ind.Ct.App. 1999), *reh'g denied*. As the parties do not raise the issue of whether the City's claim was properly brought as a negligence action or a breach of contract action, we do not address the issue. However, we do note that DPE's argument that the contract was void would be unavailing in a breach of contract action as well as a negligence action.

Because the City's contributory negligence is not a complete bar to its action and DPE is estopped from arguing that the contract was void, DPE was not entitled to judgment as a matter of law on the City's complaint. Thus, the trial court erred by granting summary judgment to DPE and denying the City's motion to correct errors.

For the foregoing reasons, we reverse the trial court's grant of summary judgment to DPE and remand for proceedings consistent with this opinion.

Reversed and remanded.

FRIEDLANDER, J., and NAJAM, J., concur.