ALTICE, Judge,
dissenting.
[40] I respectfully dissent. The issue before us, one of first impression, is whether Ind.Code § 34-12-3-3(2) immunizes firearms sellers, like KS & E, against civil actions for damages where the plaintiff was injured by the criminal misuse of a firearm by a third party regardless of whether the firearm was sold lawfully by the firearms seller. This is purely an issue of statutory interpretation.
[41] I.C. § 34-12-3-3 provides:
Except as provided in section 5(1) or 5(2) of this chapter,[6]® a person may not bring or maintain an action against a firearms or ammunition manufacturer, trade association, or seller for:
(1) recovery of damages resulting from, or injunctive relief or abatement of a nuisance relating to, the lawful:
(A) design;
(B) manufacture;
(C) marketing; or
(D)sale;
of a firearm or ammunition for a firearm; or
(2) recovery of damages resulting from the criminal or unlawful misuse of a firearm or ammunition for a firearm by a third party.
In conjunction with this statute, I.C. § 34-12-3-4(a) provides for dismissal and the award of attorney’s fees and costs to the defendant if a plaintiff brings an action under a theory of recovery described above.
[42] KS & E’s argument is straightforward: Runnels’s claims fit squarely within the plain language of I.C. § 34-12-3-3(2) prohibiting actions against firearms sellers for “recovery of damages resulting from the criminal ... misuse of a firearm ,.. by a third party.” Pursuant to this provision, KS & E contends that a firearms seller is immune from liability if a third party’s criminal use of the firearm damaged the plaintiff. This is true regardless of whether the firearm was sold lawfully or unlawfully.
[43] I agree with the majority, as would KS & E, that I.C. § 34-12-3-3(1) acts, in part, to bar victims of gun violence from pursuing claims against firearms sellers engaged in lawful sales. This subsection is not applicable here because KS & E is alleged to have engaged in an illegal straw sale.
[44] Subsection (2) of the statute, the one applicable in this ease, makes no refer *954 ence to the lawfulness of the sale. Its focus, rather, is on instances where a firearm is criminally or unlawfully misused by a third party. The majority interprets this subsection as simply “limit[ing] the seller’s exposure to liability by barring plaintiffs from holding him accountable for the portion of damages that results from the criminal or unlawful misuse of a firearm by a third party.” Op. at 949. I believe this is a strained interpretation of the statute and certainly not representative of the statute’s plain language.
[45] In relevant part, the statute provides that a person may not bring an action against a firearms seller for recovery of damages resulting from the criminal misuse of a firearm by a third party. If a plaintiff brings such an action, the defendant is entitled to dismissal and an award of attorney fees and costs pursuant to I.C. § 34-12-3-4(a). This is a quintessential immunity provision.
[46] The majority, however, relegates it to a recodification of comparative fault principles. That is, according to the majority, subsection (2) makes a gun seller hable for only a portion of the plaintiffs damages—the part attributable to the seller’s fault. But that was the law as it existed prior to enactment of the statute. See City of Gary v. Smith & Wesson Corp., 801 N.E.2d 1222 (Ind.2003).
[47] The City of Gary case involved a complaint filed by the City asserting, inter aha, negligence claims against various firearms dealers, distributors, and manufacturers. The trial court dismissed the City’s claims for failure to state a claim. The Supreme Court reversed.
[48] Relevant here, the City’s complaint generally alleged that the firearms dealers had knowingly sold to illegal buyers through intermediaries in straw purchases. With respect to the negligence claims, the Court addressed the defendants’ argument that at the time a gun is used in a crime it is no longer under them control. The Court indicated that this is an issue of proximate cause and comparative fault.
[Liability may not be imposed on an original negligent actor who sets into motion a chain of events if the ultimate injury was not reasonably foreseeable as the natural and probable consequence of the act or omission. Under comparative fault, the trier of fact can allocate fault to multiple contributing factors based on their relative factual causation, relative culpability, or some combination of both.
[49] Id. at 1244 (citations omitted). The Court discussed the difficulty of establishing proximate cause in these types of cases.[7] Despite recognizing that substantial barriers to recovery of any or all of these damages may exist, the Court held that it could not say as a matter of law that no damages were recoverable. Id. at 1244. The Court concluded: “Here we have bald allegations of liability and a claim of resulting damages. That is sufficient to state a claim. Whether the claim can be substantiated is an issue for another day.” Id. at 1245.
[50] I.C. § 34-12-3-3 had not been enacted when the City filed its complaint in 1999.[8] In 2015, the legislature retroactive *955 ly amended I.C. § 34-12-3-3 (and the other sections within the chapter), changing its effective date to August 26, 1999 and adding the phrase “or maintain” to the statute to bar people from bringing or maintaining certain actions against firearms sellers. The legislature also amended I.C. § 34-12-3-4—the statute awarding fees and costs for such actions. Specifically, another subsection was added applying to actions commenced on or before August 27, 1999 that are subsequently dismissed pursuant to I.C. § 34-12-3-3. In those cases, the amended statute provides that “no award for attorney’s fees or costs incurred shall issue”. I.C. § 34-12-3-4. Finally, the legislature amended I.C. § 34-12-3-0.1 to indicate that the chapter also applies to actions filed on or before the original effective date of the statute (April 18, 2001), not just after that date (as it existed prior to the amendment).
[51]The clear purpose of these amendments was to effect a dismissal of the City’s case, which lingered unresolved in the trial court after yet another unsuccessful appeal by the gun industry, Smith & Wesson Corp. v. City of Gary, 875 N.E.2d 422 (Ind.Ct.App.2007), trans. denied (2009). I agree with KS & E’s argument that the 2015 amendment and its connection to the City of Gary case, which included claims of unlawful straw sales, “suggests that the General Assembly was keenly aware of the import of the language used in 34-12-3-3 and thus further strengthens the argument that the General Assembly intended what the language in section 34-12-3-3 clearly states.” Appellants’ Brief at 13. Further, if I.C. § 34-12-3-3(2) was intended to be interpreted as a comparative fault provision, there would have been no reason for the legislature to amend the statute to make it retroactively applicable to the City of Gary case.
[52] Moreover, I am uncertain how the statute would work under the majority’s interpretation. The statute clearly prohibits a plaintiff from bringing certain actions—in this case bringing actions against firearms sellers for “recovery of damages resulting from the criminal ... misuse of a firearm ... by a third party.” I.C. § 34-12-3-3(2). So what actions would be barred under the majority’s interpretation of the statute?
[53] In my mind, actions are not defined by comparative fault principles. Rather, they are based on a defendant’s alleged liability for a plaintiffs injuries/damages. Whether a defendant is liable generally turns on questions of duty, breach, proximate cause, and harm. A determination regarding apportionment of damages does not occur until these threshold liability issues are determined in favor of the plaintiff.
[54] I.C. § 34-12-3-3(2) looks to the harm alleged and excludes actions against firearms sellers where the plaintiffs injury resulted from the criminal misuse of the firearm by a third party. In this case, Runnels claims that the illegal straw sale was a proximate cause of his injury. Of course, it cannot be disputed that Blackburn and the shooter’s actions were also proximate causes. Regardless of the number of bad actors, the injury was the same. A comparative fault analysis would simply apportion the damages “among persons whose fault caused or contributed to causing the loss in proportion to their percentage of ‘fault’ ”. Control Techniques, Inc. v. Johnson, 762 N.E.2d 104, 109 (Ind.2002).
*956 [55] Under the plain language of the statute, KS & E cannot be found liable for the alleged harm regardless of its degree of fault. Runnels complains that this interpretation would confer blanket immunity on firearms sellers engaged in the illegal and negligent sale of guns to straw purchasers. As observed by KS & E, the potential for significant criminal liability and regulatory penalties remains a deterrent to discourage firearms sellers from engaging in unlawful sales. Regardless, while the legislature could have—and arguably should have—carved out an exception for straw purchases in subsection (2), it did not.[9] The policy arguments ably advanced by Runnels and the various amici curiae, no matter how valid, should be directed to the legislature, not this court.

. I.C. § 34-12-3-5 provides the following exceptions, which are not applicable in this case:
Nothing in this chapter may be construed to prohibit a person from bringing or maintaining an action against a firearms or ammunition manufacturer, trade association, or seller for recovery of damages for the following:
(1) Breach of contract or warranty concerning firearms or ammunition purchased by a person.
(2) Damage or harm to a person or to property owned or leased by a person caused by a defective firearm or ammunition

. Even in the case of unlawful sales, "dealers may not be the sole cause of the injuries from the illegal use of the weapon, and in many cases will not bear any share of the fault.” Id. This may be due to the passage of time or a wide variety of intervening circumstances. "In some cases the fault allocated to the user may overwhelm or even eliminate fault of the seller.” Id.

. The precise date the City filed its case is not clear. The Supreme Court generally referenced the case being filed in “September 1999”, but the date was not important to the *955 disposition of that case. See City of Gary, 801 N.E.2d at 1227. KS & E asserts, without citation, that the complaint was “filed on August 30, 1999-and was signed and dated on August 27, 1999”. Appellants' Brief at 6.

. Other states have expressly carved out such an exception. See, e.g,, Ark.Code § 16—116— 202(d)(1) (firearms dealer "may be sued in tort for any damages proximately caused by an act of the ... dealer in violation of a state or federal law or regulation”); Colo.Rev.Stat. § 13-21-504.5(4) (same); N.H.Rev.Stat. § 508:21(¿ )(d) (barred actions "shall not include an action brought against a ... seller .., convicted of a felony under state or federal law, by a party directly harmed by the felonious conduct”).